**ORIGINAL**

AO 243 (Rev. 09/17)

MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT
SENTENCE BY A PERSON IN FEDERAL CUSTODY

CLERK OF DISTRICT COURT
NORTHERN DIST. OF TX
FORT WORTH DIVISION
FILED

2019 NOV -4 PM 3:05

| United States District Court | District | Northern |
|---|---|---|
| Name (under which you were convicted): Jose Luis Cepeda-Cortes | | Docket or Case No.: 4:14-CR-151-Y(3) |
| Place of Confinement: USP Beaumont | Prisoner No.: 73821-379 | |
| UNITED STATES OF AMERICA | Movant (include name under which convicted) | |
| v. | Jose Luis Cepeda -Cortes | |

## MOTION

1. (a) Name and location of court which entered the judgment of conviction you are challenging:

    UNITED STATES DISTRICT COURT FOR THE NORTHEN DISTRICT OF TEXAS FORT WORTH DIVISION

    (b) Criminal docket or case number (if you know): 4:14-CR-151-Y(3)

2. (a) Date of the judgment of conviction (if you know): 5/13/2016

    (b) Date of sentencing: 12/2/2016

3. Length of sentence: Life

4. Nature of crime (all counts):

    Count one of second superceding indictment: Interstate Stalking and Aiding and Abetting, 18 U.S.C.Sec.226 1 A12
    Count two of second superceding indictment: Conspiracy to Commoit Murder for Hire, 18 U.S.C. Sec.1958
    Count three of second superceding indictment: Tampering with Documents or Procedings, 18 U.S.C. Sec. 1512 (c)(1)

5. (a) What was your plea? (Check one)

    (1) Not guilty ☑    (2) Guilty ☐    (3) Nolo contendere (no contest) ☐

6. (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, what did you plead guilty to and what did you plead not guilty to?

6. If you went to trial, what kind of trial did you have? (Check one)    Jury ☑    Judge only ☐

7. Did you testify at a pretrial hearing, trial, or post-trial hearing?    Yes ☐    No ☑

AO 243 (Rev. 09/17)

8.   Did you appeal from the judgment of conviction?        Yes ☑        No ☐

9.   If you did appeal, answer the following:

(a) Name of court:   UNITED STATES COURT OF APPEALS FOR FIFTH DISTRICT

(b) Docket or case number (if you know):   16:11731

(c) Result:   Affirmed

(d) Date of result (if you know):   7/3/2018

(e) Citation to the case (if you know):

(f) Grounds raised:

The District Court abused its discretion by denying Cepeda's repeated request for severance pursuant to rule 14, Federal Rules of Criminal Procedure, because the record reflects a serious risk the joint trial compromised Cepeda'a specific trial right to be judged by the jury on the basis of only the evidence that was lawfully admissible against him and also prevented the jury from making a reliable judgment about Cepeda's guilt or innocence.

(g) Did you file a petition for certiorari in the United States Supreme Court?        Yes ☑        No ☐

If "Yes," answer the following:

(1) Docket or case number (if you know):   case:18-421

(2) Result:   Certiorari denied

(3) Date of result (if you know):   11/5/2018

(4) Citation to the case (if you know):

(5) Grounds raised:

Does a fair and consistent application of Rule 14(a) require this Court to re-examine its decision in Zafiro v. United States, 506 U.S. 534 (1993) and clarify the factors to be considered in determining if a federal criminal defendant suffered a serious risk that the jury was unable to make a reliable judgment as to his guilt because of prejudice from the "spill-over" effect of evidence admitted in a joint trial establishing numerous brutal violent extraneous criminal acts committed by a co-defendant so that Rule 14(a) required the remedy of severance and individual trial?

10.   Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications, concerning this judgment of conviction in any court?
      Yes ☐      No ☑

11.   If your answer to Question 10 was "Yes," give the following information:

(a) (1) Name of court:

(2) Docket or case number (if you know):

(3) Date of filing (if you know):

AO 243 (Rev. 09/17)

(4)   Nature of the proceeding: _____

(5)   Grounds raised: _____

(6)   Did you receive a hearing where evidence was given on your motion, petition, or application?

Yes ☐        No ☐

(7)   Result: _____

(8)   Date of result (if you know): _____

(b)  If you filed any second motion, petition, or application, give the same information:

(1)   Name of court: _____

(2)   Docket of case number (if you know): _____

(3)   Date of filing (if you know): _____

(4)   Nature of the proceeding: _____

(5)   Grounds raised: _____

(6)   Did you receive a hearing where evidence was given on your motion, petition, or application?

Yes ☐        No ☐

(7)   Result: _____

(8)   Date of result (if you know): _____

(c)  Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

(1)   First petition:        Yes ☐        No ☐

(2)   Second petition:    Yes ☐        No ☐

(d)  If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:

12.   For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground. Any legal arguments must be submitted in a separate memorandum.

**GROUND ONE:** Defendant Cepeda-Cortes received ineffective assistance of trial counsel when he failed to call defendant's son, Joey Cepeda, Bob McLean, Elena Gonzalez, as witnesses for the defense.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Movant incorporates by reference as if set verbatim the facts sworn to in affidavits of Jose Luis Cepeda, his son Joey Luis Cepeda and all other affidavits filed in this case. Trial counsel failed to investigate what these witnesses would have told the jury in rebuttal of the government's case. Trial counsel did not consult defendant and receive his approval to not call each one of the listed witnesses which would have explained and or contradicted in a material way the testimony of most of the government's witnesses.

(b) **Direct Appeal of Ground One:**

(1)   If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐       No ☑

(2)   If you did not raise this issue in your direct appeal, explain why:

Appellate counsel did not confer with defendant about what issues to raise on direct appeal.

(c) **Post-Conviction Proceedings:**

(1)   Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐       No ☑

(2)   If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3)   Did you receive a hearing on your motion, petition, or application?

Yes ☐       No ☐

(4)   Did you appeal from the denial of your motion, petition, or application?

Yes ☐      No ☐

(5)   If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐      No ☐

(6)   If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

Appellate counsel did not consult with defendant on what issues to raise on direct appeal.

**GROUND TWO:**   Defendant  Cepeda-Cortes received ineffective assistance of counsel because trial counsel failed to properly investigate all of the facts related to the government's allegation in each indicted count.

(a)   Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Trial counsel did not effecively investigate material witnesses concerning facs that would contradict the government's witnesses and co-defendant Ledezma Campano.  Ledezma-Campano would have been impeached and rebutted as to most of his testimony. Trial Counsel failed to follow up on the information initially received concerning the potential witness Elena Gonzalez about the victim and his association as a government informant. The victim was also acting as the head of a cartel that had people killed conducted  illegal drug activities while a government informant that would have supported a defensive theory of an alternative assasin of the victim by rival cartel members as a result of the victim being an informant. This defensive theory would directly contradict the government's theory that the Defendant was a co-conpirator as alleged in the indictment.

(b)   Direct Appeal of Ground Two:

(1)   If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐      No ☑

(2)   If you did not raise this issue in your direct appeal, explain why:

Appellate counsel did not consult with defendant about what issues to raise on direct appeal.

(c)   **Post-Conviction Proceedings:**

(1)   Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐   No ☑

(2)   If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(3)   Did you receive a hearing on your motion, petition, or application?

Yes ☐   No ☐

(4)   Did you appeal from the denial of your motion, petition, or application?

Yes ☐   No ☐

(5)   If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐   No ☐

(6)   If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

AO 243 (Rev. 09/17)

**GROUND THREE:** Defendant Cepeda-Cortes received ineffective assistance of trial counsel because there existed a conflict of interest between them in how to defend against the government's three count indictment

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

A review of the affidavit of Defendant shows that trial counsel rarely personally visited the Defendant while he was incarcerated. When he did, trial counsel would become agitated and angry and not talk to the Defendant. Often he would not listen to any statements that identified mistakes, inaccuracies, and untruths contained in the government's discovery. He became highly defensive when he was questioned about what he was working on. His employment representing the Defendant was terminated twice in writing. Defendant was threatened by counsel in an attempt to intimidate the Defendant. Defendant was told by counsel that the FBI always told the truth. Trial counsel told the Defendant that he was good friends with Assistant U.S. Attorney, Mr. Burgess, who was prosecuting the case against the Defendant. Defendant believes that defense counsel's relationship with the prosecutor effected his ability to question the government's witnesses as he stated that the FBI does not lie.

(b) **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐   No ☑

(2) If you did not raise this issue in your direct appeal, explain why:

Appellate counsel did not consult with the defendant on what issues to raise in his direct appeal.

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐   No ☑

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐   No ☐

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐   No ☐

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐   No ☐

(6)    If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(7)    If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this
issue:

**GROUND FOUR:**    Defendant Cepeda-Cortes received ineffective assistance of counsel when his trial attorney failed
to adequately cross exminae the co-operating codefendant witness, Ledezma Campano.

(a)    Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

Defendant adopts by reference the facts sworn to in Defendant's and Defendant's son's affidavit in relation to this
ground.  There existed at least four witnesses available to rebut co-conspirator Campo's testimony.  Trial
counsel's failure to investigate these witnesses resulted in an ineffective cross examination of the government's
co-operating witness, Ledezma-Campano.

(b)    **Direct Appeal of Ground Four:**
  (1)    If you appealed from the judgment of conviction, did you raise this issue?
        Yes ☐        No ☑
  (2)    If you did not raise this issue in your direct appeal, explain why:

  Appellate counsel did not consult with defendant concerning what issues to raise in his direct appeal

(c)    **Post-Conviction Proceedings:**
  (1)    Did you raise this issue in any post-conviction motion, petition, or application?
        Yes ☐        No ☑

  (2)    If you answer to Question (c)(1) is "Yes," state:

AO 243 (Rev. 09/17)

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

(3)   Did you receive a hearing on your motion, petition, or application?
      Yes ☐    No ☐

(4)   Did you appeal from the denial of your motion, petition, or application?
      Yes ☐    No ☐

(5)   If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?
      Yes ☐    No ☐

(6)   If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:



13.   Is there any ground in this motion that you have <u>not</u> previously presented in some federal court?  If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

14.  Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the you are challenging?       Yes ☐        No ☑

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.

15.  Give the name and address, if known, of each attorney who represented you in the following stages of the judgment you are challenging:

(a)  At the preliminary hearing:

(b)  At the arraignment and plea:
Hon. Robert Rogers 4711 Gaston Avenue Dallas, Texas 75246

(c)  At the trial:
Hon. Robert Rogers 4711 Gaston Avenue Dallas,Texas75246

(d)  At sentencing:
Hon. Robert Rogers 4711 Gaston Avenu Dallas, Texas 75246

(e)  On appeal:
Hon. Jeff Kearney 3100 West 7th Streeet - Suite 420 Ft. Worth, Texas 70107

(f)  In any post-conviction proceeding:

(g)  On appeal from any ruling against you in a post-conviction proceeding:

16.  Were you sentenced on more than one court of an indictment, or on more than one indictment, in the same court and at the same time?       Yes ☑        No ☐

17.  Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?       Yes ☐        No ☑

(a)  If so, give name and location of court that imposed the other sentence you will serve in the future:

(b)  Give the date the other sentence was imposed:

(c)  Give the length of the other sentence:

(d)  Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?       Yes ☐        No ☐

AO 243 (Rev. 09/17)

18.   TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*

---

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:
  A one-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of –
      (1)   the date on which the judgment of conviction became final;
      (2)   the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;
      (3)   the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
      (4)   the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Therefore, movant asks that the Court grant the following relief:

Defendant Cepeda-Cortes, moves the Court to grant relief that he received ineffective assistance of counsel as to any allegation herein, that he was prejudiced by the same and thereby should be granted a new trial as to guilt/innocence.

or any other relief to which movant may be entitled.

_____<br>
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on _____.

(month, date, year)

Executed (signed) on _____ (date)

_____<br>
Signature of Movant

If the person signing is not movant, state relationship to movant and explain why movant is not signing this motion.

**GROUND 5 :** Defendant Cepeda-Cortes received ineffective assistance of counsel when he failed to call, Gilbert Garza, Miriam Cepeda, Laura Cepeda and Hugo Resendez as defense witnesses to testify about relevant rebuttal facts to the government's case.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.)

The Defendant adopts by reference the facts sworn to in Defendant's and Defendant's son affidavit and adopts by reference the factual recitation in Ground No. 1 as if set out verbatim. Trial counsel did not investigate how each one of these witnesses could rebut the government's case in chief.

(b) **Direct Appeal of Ground      :**

(1)   If you appealed from the judgment of conviction, did you raise this issue?
Yes ☐      No X

(2)   If you did not raise this issue in your direct appeal, explain why:
Appellate counsel never conferred with me about what issues to raise on direct appeal.

(c) **Post-Conviction Proceedings:**

(1)   Did you raise this issue in any post-conviction motion, petition, or application?
Yes ☐      No ☐

(2)   If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:_____

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision:_____

Result (attach a copy of the court's opinion or order, if available):

_____

(3)   Did you receive a hearing on your motion, petition, or application?

Yes ☐          No ☐

(4)   Did you appeal from the denial of your motion, petition, or application?
Yes ☐          No ☐

(5)   If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?
Yes ☐          No ☐

(6)   If you answer to Question (c)(4) is "Yes," state:
Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision:_____

Result (attach a copy of the Court's opinion or order, if available):

_____

(7)   If you answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

_____

**GROUND 6:** <u>Defendant- Cepeda-Cortes received ineffective assistance of counsel when trial counsel told the family of the Defendant that he stipulated with the government that he was minimally involved in the conspiracy and no other witnesses were necessary to testify</u>

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.)

A review of the trial testimony shows that near the end of testimony when trial counsel was presenting the defense, he told the family the defense needed no other defense witnesses and he had stipulated with the government that the Defendant played a minor role in the alleged conspiracy. This was a critical error because any involvement in the alleged conspiracy would make the Defendant guilty and there were other defense witnesses that could rebut the State's case in chief.

(b) **Direct Appeal of Ground    :**

   (1)  If you appealed from the judgment of conviction, did you raise this issue?

       Yes ☐       No X

   (2)  If you did not raise this issue in your direct appeal, explain why:

Appellate counsel did not consult with the Defendant as to which issues to raise on direct appeal.

(c) **Post-Conviction Proceedings:**

   (1)  Did you raise this issue in any post-conviction motion, petition, or application?

       Yes ☐       No ☐

   (2)  If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

   (3)  Did you receive a hearing on your motion, petition, or application?

       Yes ☐       No ☐

(4)   Did you appeal from the denial of your motion, petition, or application?
      Yes ☐          No ☐

(5)   If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?
      Yes ☐          No ☐

(6)   If you answer to Question (c)(4) is "Yes," state:
      Name and location of the court where the appeal was filed:

      _____

      Docket or case number (if you know): _____

      Date of the court's decision:_____

      Result (attach a copy of the Court's opinion or order, if available):

      _____

(7)   If you answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not
      appeal or raise this issue:



      _____

**GROUND 7 :** <u>Defendant was denied effective assistance of counsel on appeal.</u>

(a) Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.)

A review of the Appellant's brief in direct appeal to the Fifth Circuit Court of Appeals shows that Appellate counsel only raised one issue.  That issue was to complain about the trial court's denial of the Defendant's motion to sever.  The Defendant believes that Appellate counsel should have raised issues related to the trial court overruling objections to inadmissible 404 b evidence of extraneous offenses, and sufficiency of the evidence which directly relate to the issue raised.

(b) **Direct Appeal of Ground      :**
    (1)   If you appealed from the judgment of conviction, did you raise this issue?
            Yes ☐       No X
    (2)   I you did not raise this issue in your direct appeal, explain why:
          Appellate counsel did not consult with Defendant about what issues to raise on direct appeal.

(c) **Post-Conviction Proceedings:**
    (1)   Did you raise this issue in any post-conviction motion, petition, or application?
            Yes ☐       No ☐
    (2)   If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:_____

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision:_____

Result (attach a copy of the court's opinion or order, if available):

_____

    (3)   Did you receive a hearing on your motion, petition, or application?
            Yes ☐       No ☐

(4)    Did you appeal from the denial of your motion, petition, or application?

        Yes ☐        No ☐

(5)    If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

        Yes ☐        No ☐

(6)    If you answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision:_____

Result (attach a copy of the Court's opinion or order, if available):

_____

(7)    If you answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

_____

**GROUND 8** : Defendant Cepeda-Cortes received ineffective assistance of counsel when trial counsel failed to call the Defendant as a witness.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.)

The affidavit of Defendant and Defendant's son is incorporated herein by reference as if set out verbatim. Defendant wanted to testify, but trial counsel did not call him as a witness. Defendant and Defendant's son could adequately rebut the governments's case more than any witness for the defense. Defendant was not adequately and effectively advised of whether he should or should not testify in his defense.

(b) **Direct Appeal of Ground** :

(1)   If you appealed from the judgment of conviction, did you raise this issue?
Yes ☐        No X

(2)   I you did not raise this issue in your direct appeal, explain why:
Appellate counsel did not consult with Defendant about what issues to raise on direct appeal.

(c) **Post-Conviction Proceedings:**

(1)   Did you raise this issue in any post-conviction motion, petition, or application?
Yes ☐        No ☐

(2)   If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:_____

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision:_____

Result (attach a copy of the court's opinion or order, if available):

_____

(3)   Did you receive a hearing on your motion, petition, or application?
Yes ☐        No ☐

(4)   Did you appeal from the denial of your motion, petition, or application?
       Yes ☐        No ☐

(5)   If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?
       Yes ☐        No ☐

(6)   If you answer to Question (c)(4) is "Yes," state:
      Name and location of the court where the appeal was filed:

_____

      Docket or case number (if you know): _____

      Date of the court's decision:_____

      Result (attach a copy of the Court's opinion or order, if available):

_____

(7)   If you answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

_____

**GROUND 9** : Defendant received ineffective assistance of counsel, because trial counsel did not adequately prepare the defense expert to be qualified to testify for the defense.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.)

Defendant refers this Court to the trial testimony at which trial counsel called the expert as a defense witness, but was not allowed to testify by the trial court.

(b) **Direct Appeal of Ground**      :

    (1)   If you appealed from the judgment of conviction, did you raise this issue?

          Yes ☐       No X

    (2)   I you did not raise this issue in your direct appeal, explain why:

          Appellate counsel did not consult with Defendant about what issues to raise on direct appeal.

(c) **Post-Conviction Proceedings:**

    (1)   Did you raise this issue in any post-conviction motion, petition, or application?

          Yes ☐       No ☐

    (2)   If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:_____

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision:_____

Result (attach a copy of the court's opinion or order, if available):

_____

    (3)   Did you receive a hearing on your motion, petition, or application?

          Yes ☐       No ☐

(4)   Did you appeal from the denial of your motion, petition, or application?
      Yes ☐            No ☐

(5)   If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?
      Yes ☐            No ☐

(6)   If you answer to Question (c)(4) is "Yes," state:
      Name and location of the court where the appeal was filed:

      _____

      Docket or case number (if you know): _____

      Date of the court's decision:_____

      Result (attach a copy of the Court's opinion or order, if available):

      _____

(7)   If you answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not
      appeal or raise this issue:

      _____

**GROUND 10:** <u>There may exist prosecution misconduct by the government. Defendant-</u>
<u>movant's investigation before filing this motion has revealed that the government witness-</u>
<u>Ledezama Campano lied before the jury either with knowledge of the government or by</u>
<u>instruction by the government agents</u>

    (a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.)

    Movant has newly discovered evidence from a witness that co-defendant, Ledezama-Campano admitted he lied to the jury about movant-defendant's involvement in each count of the indictment to save himself and his father.

---

**(b) Direct Appeal of Ground        :**

    (1)   If you appealed from the judgment of conviction, did you raise this issue?

          Yes ☐      No X

    (2)   I you did not raise this issue in your direct appeal, explain why:

    Movant-defendant has only recently discovered facts to support this allegation in Ground No. 10.

---

**© Post-Conviction Proceedings:**

    (1)   Did you raise this issue in any post-conviction motion, petition, or application?

          Yes ☐      No ☐

    (2)   If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:_____

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision:_____

Result (attach a copy of the court's opinion or order, if available):

---

    (3)   Did you receive a hearing on your motion, petition, or application?

          Yes ☐      No ☐

(4)   Did you appeal from the denial of your motion, petition, or application?
      Yes ☐        No ☐

(5)   If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?
      Yes ☐        No ☐

(6)   If you answer to Question (c)(4) is "Yes," state:
Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision:_____

Result (attach a copy of the Court's opinion or order, if available):


_____

(7)   If you answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:




_____

**GROUND 11  :** Defendant is actually innocent.  Evidence of actual innocence supported by F.B.I 302's provided to defense post-trial indicate another cartel/ or individuals not associated with defendant carried out the murder in this case

(a) Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.)

Based on a review of port-trial F.B.I. 302's supplied to Defense counsel it appears that Defendant Cepeda-Cortes was not involved in the murder of the victim Chapa or involved with those who actually planned and carried out the shooting and murder of the victim Chapa and therefore Defendant is innocent of the charges in this matter.

(b) **Direct Appeal of Ground        :**
      (1)  If you appealed from the judgment of conviction, did you raise this issue?
           Yes ☐    No X
      (2)  If you did not raise this issue in your direct appeal, explain why:
           Appellate counsel did not consult with Defendant about what issues to raise on direct appeal.

© **Post-Conviction Proceedings:**
      (1)  Did you raise this issue in any post-conviction motion, petition, or application?
           Yes ☐        No ☐
      (2)  If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:_____

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision:_____

Result (attach a copy of the court's opinion or order, if available):

_____

      (3)  Did you receive a hearing on your motion, petition, or application?
           Yes ☐        No ☐

(4)  Did you appeal from the denial of your motion, petition, or application?
      Yes ☐        No ☐

(5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?
      Yes ☐        No ☐

(6)  If you answer to Question (c)(4) is "Yes," state:
     Name and location of the court where the appeal was filed:

     _____

     Docket or case number (if you know): _____

     Date of the court's decision:_____

     Result (attach a copy of the Court's opinion or order, if available):

     _____

(7)  If you answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

18.    TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*

---

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:

A one-year period of limitation shall apply to a motion under this section.  The limitation period shall run from the latest of –

(1)    the date on which the judgment of conviction became final;

(2)    the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;

(3)    the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4)    the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

AO 243 (Rev. 09/17)

Therefore, movant asks that the Court grant the following relief:

Defendant Cepeda-Cortez, moves the Court to grant relief that he received ineffective assistance of counsel as to any allegation herein,that he was prejudiced by the same and thereby should be granted a new trial as to guilt/innocence.

or any other relief to which movant may be entitled.

_____
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on _____ .

(month, date, year)

Executed (signed) on _____10/30/19_____ (date)

_____
Signature of Movant

If the person signing is not movant, state relationship to movant and explain why movant is not signing this motion.

AO 243 (Rev. 09/17)

**ORIGINAL**

CLERK OF DISTRICT COURT
NORTHERN DIST. OF TX
FORT WORTH DIVISION
RECEIVED

2019 NOV -4  PM 3:05

DEPUTY CLERK_____

## Motion to Vacate, Set Aside, or Correct a Sentence
# By a Person in Federal Custody

### (Motion Under 28 U.S.C. § 2255)

### Instructions

1.  To use this form, you must be a person who is serving a sentence under a judgment against you in a federal court. You are asking for relief from the conviction or the sentence. This form is your motion for relief.

2.  You must file the form in the United States district court that entered the judgment that you are challenging. If you want to challenge a federal judgment that imposed a sentence to be served in the future, you should file the motion in the federal court that entered that judgment.

3.  Make sure the form is typed or neatly written.

4.  You must tell the truth and sign the form. If you make a false statement of a material fact, you may be prosecuted for perjury.

5.  Answer all the questions. You do not need to cite law. You may submit additional pages if necessary. If you do not fill out the form properly, you will be asked to submit additional or correct information. If you want to submit any legal arguments, you must submit them in a separate memorandum. Be aware that any such memorandum may be subject to page limits set forth in the local rules of the court where you file this motion.

6.  If you cannot pay for the costs of this motion (such as costs for an attorney or transcripts), you may ask to proceed *in forma pauperis* (as a poor person). To do that, you must fill out the last page of this form. Also, you must submit a certificate signed by an officer at the institution where you are confined showing the amount of money that the institution is holding for you.

7.  In this motion, you may challenge the judgment entered by only one court. If you want to challenge a judgment entered by a different judge or division (either in the same district or in a different district), you must file a separate motion.

8.  When you have completed the form, send the original and _____ copies to the Clerk of the United States District Court at this address:

    **Clerk, United States District Court for**
    **Address**
    **City, State Zip Code**

    If you want a file-stamped copy of the petition, you must enclose an additional copy of the petition and ask the court to file-stamp it and return it to you.

9.  **CAUTION:** You must include in this motion all the grounds for relief from the conviction or sentence that you challenge. And you must state the facts that support each ground. If you fail to set forth all the grounds in this motion, you may be barred from presenting additional grounds at a later date.

10. **CAPITAL CASES:** If you are under a sentence of death, you are entitled to the assistance of counsel and should request the appointment of counsel.

# AFFIDAVIT
## Jose Luis Cepeda-Cortes

STATE OF TEXAS
COUNTY OF TARRANT

On this **30** day of October 2019, personally appeared before me Jose Luis Cepeda-Cortes, known to me personally to be the person whose signature is affixed hereto, who, being by me first duly sworn, on his oath deposed and said the following:

"My name is Jose Luis Cepeda-Cortes. I am over the age of 18 and am fully competent to make this affidavit. I am sound of mind and competent to make this affidavit and have personal knowledge of the facts which are contained therein of which are accurate and true.

On <u>May 13, 2016</u> I was convicted after a jury verdict finding me guilty of <u>Interstate Stalking, Conspiracy to Commit Murder for hire, tampering with documents or proceedings.</u>

On December 2,2016 I was sentenced by the Honorable Judge Terry Means to Life in prison on count 1,2 and 240 months on count three with all sentences to run concurrently.

Thereafter, I appealed my convictions to Court of Appeals Fifth Circuit. The grounds and point of error on my appeal were the district court abused its discretion by denying Cepeda's repeated request for severance pursuant to Rule 14, Federal Rules of Criminal Procedure.

The Court of Appeals Fifth Circuit affirmed my conditions I filed a timely petition format of Certiorari in the U.S Supreme Court. On November 5, 2018 the U.S Supreme Court denied my Petition for Writ of Certiorari.

Since the date of my detention and arrest I have been incarcerated now for 62 months.  My family and I at great financial cost are now and have retained our third set of attorneys to assist us in our quest for justice. I am and always have been innocent of the charges of which I was convicted of. Lead trial counsel Robert Rogers, though he retained two attorneys to assist him, was ineffective as Counsel as identified by U.S vs. Strickland  citation is 466 U.S 668 (1984) and his ineffectiveness and incompetence, as I will enumerate hereafter, specifically resulted in

harm and resulted in proximately my not receiving a fair trial and wrongful conviction and imprisonment. Prior to specifically identifying the extent of Mr. Rodgers incompetence and ineffectiveness I would like to state since being convicted I have endeavored to learn the law the best I can and have been working on my paralegal certificate. Both myself and my son Joey Cepeda Jr. have worked nonstop on my case. My greatest regret is I only wish I knew that which I know now about the retention of Counsel, the Justice system, the U.S Attorney's office, and Federal Law and Procedure and evidence. My greatest regret and that of my family is we did not know and had no experience in how and who to retain as trial counsel.

Our current attorneys have worked nonstop, more diligently, and have exhaustively reviewed and investigated my case, met with witnesses, and  have spent more time in the first two months investigating and interviewing material witnesses than my trial Attorney did in the entire 22 months he was retained to defend me. My current Attorneys have identified through exhaustively interviewing witnesses, facts that were and are material and relevant to issues involved in my trial and my innocence that were not identified and investigated by trial counsel. At sentencing the Honorable Judge Terry Means thanked me for the courteous way I conducted myself during the trial and your Honorable stated "Mr. Cepeda- Cortes I know this must be a hard pill for you to swallow." Post sentencing my son Joey wrote a letter to you and the Court. In a reply letter you stated, "I cannot help you **at this time and there is nothing I can do now,**" and advised my remedy was through the Appellate process. Well Judge Means I did as you advised and my last legal remedy appears to be the Motion Under 28 U.S.C 2255 my Attorneys have filed, and request for a hearing to develop and support the allegations contained in the Motion Under 28 U.S.C 2255 and the filed affidavits that would support that without a doubt my trial attorneys and Mr. Rogers in particular were ineffective and did not rise to the standard required by U.S vs. Strickland and their lack of competency caused harm. But for their lack of diligence a different jury verdict would have resulted. I have recently been diagnosed with prostate cancer and suspect that unless I am afforded a hearing to prove my allegations, I will certainly die in prison. Prior to my arrest I evidenced a lifelong history of respecting and obeying the law and the rules of society. I was an exemplary father and graduated in the top of my

college class. "I had a long and successful career in telecommunications spanning four decades. Moreover, during my last 10 years of my telecom career. I served in the capacity as Union Director of CWA Local 6171 (RGV Chapter). I was (and still am) a committed and passionate leader in staunch defense of my union brothers and sister' working rights." I was extremely active in the McAllen Community and achieved success in my own business. I was and always have been a good man, friend, and neighbor. I acknowledge I am a flawed person and have been prone to being gullible and trusting to a fault. Perhaps I have always wanted to be somebody I am not, and these flaws greatly contributed to the mistake of involving myself and trusting my cousin Jesus Ledesma Cepeda until the date of the victim's death. I never realized or knew my cousin was working for a criminal organization or that the purpose of locating Mr. Chapa was to harm him. However, had the facts and evidence been presented by Mr. Rogers effectively and competently I believe I would have been found innocent.

I.

## CONFLICT OF PERSONALITIES BETWEEN TRIAL COUNSEL AND DEFENDANT WHICH PRE-CLUDED TRIAL COUNSEL FROM BEING EFFECTIVE COUNSEL

From the outset of retaining Mr. Rogers we developed a conflict of personalities. He rarely and infrequently visited with me. When we would discuss my case frequently, I would identify mistakes, inaccuracies, and untruths contained in the government discovery and statements the U.S Attorney was making to Mr. Rogers. He was paid an extremely reasonable fee of $250,000.00. I would ask him to investigate many of the untruths the government was alleging. Routinely he would not listen. Often, he became highly defensive when I would question what he was working on. I terminated his employment on at least two occasions and did so in writing. The first time he threatened me and always attempted to intimidate me. On one occasion I told him "the F.B.I was not telling the truth" and identified what the true facts were and in fact identified factual witnesses who would contradict the governments facts. He responded by telling me "the F.B.I never lies". He also incredulously told me he was good friends with Mr. Burgess, the U.S Attorney and rather than defending me always took Mr. Burgess position. On that date I fired him and told him I did not want to see him again.

He laughed and stated I was not getting a penny in a refund and stated, "he was one of the best attorneys in the country and was a board-certified criminal law expert". Actually, it was my son who retained Mr. Rogers. My family after meeting him did not want to retain him. A Mr. Robert Rogers of Dallas was recommended to our family by someone our family knew in the McAllen area. The insidious fact we now know is there are two Robert Rogers who practice criminal law in Dallas and the Robert Rogers my son retained in-fact is not the Robert Rogers our family was referred to.

II.

Trial attorney Robert Rogers failure to visit and thoroughly review case with Defendant, interview witnesses and lack of competent skills in  interviewing Defendant, material witness, and conduct a thorough investigation resulted relevant and material evidence and facts not being presented to the jury that would have rebutted the governments accusations and likely have resulted in a different jury verdict and resulted in the failure of Attorney to thoroughly comprehended facts.

A. "Robert Rogers rarely came to visit with me during the 19-month pre-trial period. His visits to Parker County Jail were sparse and infrequent at best. His conduct and behavior to this respect, however, was most appalling and most telling during the 3-week trial phase of the case. Indeed, he visited me only ONE time at the Tarrant County Jail and this occurred right before the actual trial commenced. During the trial itself was sat at opposite sides of the table. Our relationship had deteriorated to the degree he would not communicate with me directly and would rather use family members to convey message to me. "

B. Attorney did not effectively interview, investigate, and thoroughly review discovery. He failed to properly interview inverting and material witnesses or learn the material and relevant facts from witnesses. Defendant, defendant's son, and family members and others were not competently and effectively interviewed. All had personal first-hand knowledge of material facts and relevant evidence that would have rebutted government charges, government accusations, and government witnesses; and

especially the testimony of Jesus Ledesma- Campano, a co-conspirator who became a testifying government witness at trial.  Campano would have been impeached with information and facts within knowledge of witnesses Rodgers never adequately interviewed. Said witnesses could have testified and rebutted the government's case. Though attorney Robert Rogers did call a number of these individuals as witness at trial, his total lack of understanding of the facts precluded him from asking any questions allowing the witnesses to provide information to the jury regarding defendant's innocence. Also, by having little understanding of facts, Robert Rogers was ineffective in cross examination of government witnesses; particularly in impeaching the testifying co-conspirators and law enforcement personnel who testified.

C. Attorneys demeanor, attitude, personality, emotional un-balance precluded him from having necessary basic skills to interact, communicate with, advise, and interview, or competently investigate a complex criminal litigation case and effectively competently defend a high-profile criminal case. Mr. Rogers never thoroughly interviewed the material witnesses in my case. He rarely met with anyone. He appeared to be a "book smart" highly intelligent man; however, most of my experience with him he always appeared uneasy, emotionally volatile, agitated, nervous and routinely was not patient or in any way demonstrated the basic social skills, aptitude and especially experience or intuition necessary in interviewing me or my witnesses. Routinely when we would ask him questions or suggest something, he would become highly defensive and insecure. On a number of occasions, he would state "I am a board-certified criminal law expert I know what I am doing". Frequently he seemed distracted and did not listen to what I was telling him or what my son or defense witnesses were trying to communicate regarding critical material and relevant facts and evidence.

D. Attorney failed to thoroughly and effectively investigate the government's case. Though it appears attorney did retain two attorneys to assist him and an investigator was at least in appearance utilized, witnesses provided to attorney by defendant

were not thoroughly and competently interviewed. Had attorney done so critical material information would have been disclosed that was material and relevant to rebutting government accusations and would have effectively impeached government witnesses.

E.   Attorney failed to identify and locate and interview, subpoena material witness for the defense, despite said person, Elena Gonzalez having been identified by the government in discovery and whose location and procurement for trial could have been easily accomplished. Ms. Gonzalez had critical first-hand knowledge and contact with the victim Mr. Chapa regarding criminal activity of the victim, that in-fact he was the de-facto cartel leader of the Gulf Cartel. Had such witness been interviewed and procured she would have provided testimony and evidence that would have allowed the Honorable Judge Terry Means to permit testimony supporting both who victim really was and an Alternant Perpetrator Theory of defense that the court denied, and had attorney fulfilled his duty of due diligence, evidence contradicting government accusations would have been admitted at trial. To the contrary despite being provided with information by government regarding Ms. Gonzalez, her identity and general whereabouts and location counsel failed to interview her, and procure her attendance at trial and rather moved for a continuance, at which time the Honorable Judge Terry Means rebuked counsel stating "the government gave you this information, it was contained in the discovery". Attorney Robert Rogers responded by stating "I am a solo-practitioner" Judge Means replied" it sounds to me as if you are not only asking for information, you are asking the government to do your work for you too" The court then denied my attorneys Motion For Continuance. That brief exchange memorialized the entire story of Mr. Rogers ineffectiveness prior to and during.

III.

**Attorney Robert Rogers failed to effectively advise Applicant of his right to testify or make the decision whether or not his son Joey Cepeda would testify.**

Defendant had knowledge of information and facts that would have rebutted accusations against him and have rebutted testimony of government witnesses. Defendant wanted to testify. He disclosed this to Rogers. It became shockingly evident in trial that Rogers was incompetent and ineffective. When defendant and defendant's son challenged Rogers and expressed their desire and urgency to testify, Attorney Rogers misrepresented to Defendant, Defendant's son, other witnesses and family members that the government had "stipulated that defendant had played a minor role in the conspiracy" and there was no need to call Defendant and Defendants son as witnesses." Attorney Rogers in doing so either grossly failed to comprehend the stipulation offered by Government or recklessly and intentionally misrepresented the legal import of the stipulation to Defendant, Defendants son and family members in order to conclude the trial. Nevertheless, Defendants son demanded to testify. Attorney Rogers never disclosed or communicated this to Defendant, nor did Rogers allow Defendant to make the decision whether or not his son would testify. Any competent trial attorney would have realized that after the cooperating government witness and co-conspirator testified and at or conclusion of governments case, that without doubt Defendant was losing his trial. At all times prior to trial and during trial Defendant, Defendants son and family members, were led to believe, and Rogers had represented, to defendant's son and family members that Defendants son would testify and was the defenses number one witness. Defendant's son more than any person involved had first -hand knowledge of facts and would have testified to matters that would have rebutted many governments accusations, and testimony offered by the cooperating co-conspirator. As a result of the above, Defendant and Defendant's son did not testify and due to attorney Rogers misrepresentations to Defendant, Defendants son, and family members, material facts relevant to rebutting government accusations and establishing the Defendants innocence were not heard by the jury. Defendant was harmed, and an alternative jury verdict of acquittal did not result.

## IV.

Trial attorney Rogers failed to properly supervise Defendants trial. The defense expert not allowed to testify  would have testified that F.B.I agents' explanation as to why the audio video machine recording the Defendants initial interview with the F.B.I was not operating correctly

was false and untrue. Attorney Rogers did not procure and request government to produce the original audio video machine F.B.I agents utilized to record Defendant upon detention and arrest. Rather, counsel authorized and allowed expert to conduct tests on a duplicate model rather than the original. This mistake resulted in Court denying admission expert testimony relevant to veracity of F.B.I witnesses. Had attorney Rogers properly supervised the expert and tests and known the law as to admission at trial, the credibility and truthfulness of F.B.I agents who investigated your Defendant and testified at trial would have been credibly impeached. Attorney Rodgers proclaimed a great victory to Defendant and his family claiming that while his expert was not permitted to testify, his brilliant lawyering forced the government to forbear said agents from testifying regarding applicants' alleged admissions and statements. To the contrary, had attorney Rogers effectively and competently supervised his expert and adequately known the law and performed his duties, those same F.B.I agents, who testified to many issues in the trial would and could have been credibly impeached.

### V.

Lead counsel Robert Rogers lacked the necessary trial skills to defend a complex criminal litigation case. Rodgers lack of trial attorney skills are evident on record specifically in cross examination of government witnesses and in particular cross examining the testifying government witness co-conspirator. Rogers lack of investigating the facts in the case, interviewing witnesses, understanding the facts, and in conjunction with ineffective trial skills resulted in material facts regarding client's innocence not being heard by the jury. Rogers incompetence and lack of minimum skills in cross examining government witnesses and the cooperating co- conspirator Jesus Ledesma Campano precluded Campano from being easily and effectively impeached, and facts and evidence rebutting the governments accusations and evidencing Defendants innocence were not presented to the jury. Rogers in all ways failed to be an effective and zealous advocate for Defendant. Contrary to his self-proclaimed bravado regarding his qualifications at retention and prior to trial, Rogers demonstrated in trial and on record an attorney easily intimidated by the U.S Government and in fact by Honorable Judge Terry Means. Frequently he was admonished by the Court for not speaking loudly enough. In no way did he evidence those skills minimally required of trial counsel or a zealous advocate.

## VI.

Voluminous testimony was introduced and admitted in trial regarding extraneous murders that co- conspirators Jesus Ledesma -Cepeda was involved. Though attorney Roberts did object and succeed in having the Court instruct the jury that these extraneous offenses were only to be considered in regard to Defendant Ledezma, Attorney Rogers failed and did not cross examine any of the government witnesses testifying to the extraneous offenses in any manner or by asking them and having them reaffirm that said extraneous offenses related only to Defendant Ledezma and not in any way to applicant. An objection and request for severance though necessary, for a trial counsel to rely on a Judges instruction without also cross examining the witnesses resulted in ineffective counsel and harm to applicant.

## VII.

Attorney Rogers was ineffective and incompetent in trial and did not meet minimal standards identified in U.S V Strickland. Defendant was harmed by attorney Rogers deficient ineffective defense and abilities. Attorney Rogers negligent preparation including not thoroughly interviewing fact witnesses, investigating the facts, competently reviewing government discovery and failing to identify and procure witnesses attendance at trial, along with a thorough lack of comprehension of the facts from not communicating with witnesses and defendant resulted specifically in:

A.  Ineffective cross examination of government witnesses and in particularly cooperating co- conspirators:

B.  Ineffective direct examination of Defendant witnesses that were not asked questions and provided testimony regarding facts that would have rebutted government accusations and evidenced the innocence of the Defendant and rebutted government accusations

## VIII.

### Newly Discovered Evidence Supporting Innocence of Applicant

F.B.I 302 reports provided by Government to Applicants Appellate Counsel and provided by Government post Jury Verdict evidence and support Defendants innocence. These reports also

cast doubt on government's theory that Rodolfo Villareal (aka El Gato) master minded the planning and killing of the victim Chapa.

At least four fact witnesses are available to rebut government accusations and the untruthful testimony of cooperating co – conspirator Jesus Gerardo Campano that were not asked questions by trial attorney Rogers at trial. As a result of the ineffective, incompetent investigation of trial attorney Robert Rogers and his failure to thoroughly investigate interview fact witnesses, relevant and material facts rebutting the government's case, impeaching government witnesses, and supporting the innocence of the defendant were not heard by the jury. Had they been so a different verdict is likely.

_____

Jose Luis Cepeda-Cortes

_10/30/19_____

Date

Sworn to and subscribed before me on this _30_ day of October ___ 2019, to witness which I place my hand and official seal of office.

_____

Reyna Liliana Salas, Notary Public

In and For the State of Texas, Tarrant County



REYNA LILIANA SALAS
Notary ID #125025284
My Commission Expires
March 7, 2021

## AFFIDAVIT
## Laura Lynette Having

STATE OF TEXAS
COUNTY OF TARRANT

My name is Laura Lynette Having. I am Defendant Jose Luis Cepeda-Cortes' oldest daughter. I can testify to the following matters regarding my father's case:

1.  Attorney Rogers, nor others helping him thoroughly interviewed or investigated potential fact witnesses that had crucial information that would have rebutted the governments accusations and impeached testimony of government witnesses.

2.  My cousin Campano testified at trial that he, my cousin Ledezma, and my father met in Mexico after victim's death and allegedly fabricated an alibi defense.  This is untrue.  My father went to Mexico only twice after the shooting.  Both myself and my younger sister Miriam accompanied him.  The three of us stayed at the Holiday Inn and our trips were brief.  On one occasion, we did see Campano briefly at a family dinner at the Rey Del Cabrito restaurant.  I was sitting next to my father at the dinner for the whole time.  I've never been interviewed at length by Attorney Rogers much less about these Mexico trips.  I believe I've met alone with Attorney Rogers twice after the initial hiring.  Of those two times, Attorney Rogers seemed to be in a hurry, and I felt the meetings very rushed.  Attorney Rogers spent more time and effort discussing the need for my father to accept a plea agreement than interviewing me on the many details and circumstances pertaining to the Mexico trips with my father, post victim's death.  Later, in the trial after a few of us had testified, Attorney Rogers met with the family.  His daughter was even present.  Attorney Rogers told all of us he had great news, that he and the U.S Attorney had entered into some type of legal agreement that the U.S Attorney finally had agreed my father played only a minor role in everything.  Most of

the family didn't trust Mr. Rogers by then and my brother and the rest of the family were very concerned when he told us there was no need for anyone else to testify.

3.  Attorney Rogers generally seemed like he was really overwhelmed. I don't think he is good with people or even likes being around them. At the very first initial meeting, (after he had been retained over the phone) he was quite upset that additional family members arrived at his office, in addition to my brother and me. He was upset enough to verbally chastise me for their presence. On another occasion, he very inappropriately yelled at my brother to "shut up." Attorney Rogers missed a lot of critical details and failed to provide the jury with information that they should have heard. All that missing information would have helped my father, but Attorney Rogers simply did not spend enough time (or any) with all of the witnesses.

_____        Oct 31, 2019
Laura Lynette Having                              Date

Sworn to and subscribed before me on this __31__ day of October 2019, to witness which I place my hand and official seal of office.



Reyna Liliana Salas, Notary Public
In and For the State of Texas, Tarrant County

REYNA LILIANA SALAS
Notary ID #125025284
My Commission Expires
March 7, 2021

## AFFIDAVIT
## SANDRA MCLEAN

STATE OF TEXAS
COUNTY OF TARRANT

My name is Sandra McLean. I am the sister of Jose Luis Cepeda-Cortes. I am 59 years of age and reside in Grapevine Texas. I am currently employed by Parker University in Dallas as its Vice President and Chief Human Resources Officer.

I have personal knowledge of the facts contained in this Affidavit, and they are true and correct. Since I was the only family member that lives in Dallas area, I had the most contact with attorney Robert Rogers. Other than my nephew Joey, the rest of our family after initially meeting Mr. Rogers were not in favor of hiring him. However, Joey upon my brother's arrest spoke with Mr. Rogers over the phone and immediately wired him approximately $20,000. This upset the family because we had not met the attorney yet. Upon meeting him, we had reservations in that he just didn't seem right. He appeared restless and anxious. Afterward, the family all rode in my car and discussed Mr. Rogers being arrogant and condescending. I believe though he appeared to know the law, he was very uncomfortable around people. I think he lacked the social skills and demeanor to interact with people. He later commented to me that he was not easy to work with, which is why he chose to practice law on his own.

This was in response to my asking him about his staff, as it did not appear, he had any. I had expressed concerns to the family that he didn't even have the legal staff or support to defend such a serious case as my brothers' case. Shortly after my nephew retained Mr. Rogers, my husband and I had to buy computers and other office equipment for Mr. Rogers: he didn't have the proper or adequate resources. I thought that was odd, especially given his legal fee was a quarter million dollars. Mr. Rogers, in my experience with him, frequently appeared irritable, restless, impatient and always in a hurry. He was not a good listener. There were times witnesses and family members would attempt to provide him with information and he would appear to be disinterested and often cut us off. There was a lot of information pertaining to my brothers' case that never came out at trial or was heard by the jury. Though a number of us testified in trial, Mr. Rogers never asked us pertinent questions about significant facts we knew that would have countered the government's accusations and supported my brother. From speaking with my brother and nephew prior to trial, they both believed they would get the opportunity to testify. They both wanted to tell the jury that what the government was saying was untrue. Other than myself, my family was led to believe by Mr. Rogers that my brother and

Joey would testify. Just before trial Mr. Rogers confided to me, he was not going to call Joey as a witness.   Joey had a lot of factual information that would have supported my brother's innocence and compromised government accusations.   However, Mr. Rogers told me he thought Joey was a "loaded cannon".   I remember being disappointed.   It was the belief of our family that it was Mr. Rogers who appeared at times to be emotionally volatile. I work in Human resources and must interact with many types of people.   Mr. Rogers appeared to be insecure and highly defensive whenever our family questioned him regarding my brother's case.   When he told me, he was not going to call my nephew as a witness, he told me to keep that to myself. After a few of us testified in trial, Mr. Rogers convened a family meeting in a room outside the Court room.   He appeared excited, and even elated.   He represented to our family that he had just finished speaking to Mr. Burgess, and convinced the U.S attorney to stipulate that my brother played only a minor role in the conspiracy.   The U.S Attorney would acknowledge this to the jury.   In return, Mr. Rogers had agreed to not call any more witnesses to the stand.   For the first time since the trial began, our. Family. Had. Hope.   Mr. Rogers told us it wasn't necessary that my brother take the stand or that Joey, my nephew testify. Joey was not in agreement.   Mr. Rogers stated he was the trial expert; something our family had heard on more than one prior occasion.   As a result, my nephew did not testify.

Our family was devasted by the jury's verdict, because we expected something totally different. After the trial, Mr. Rogers met with our family and said something about a witness who could have made a big difference, but it didn't matter at that point.  He made other excuses also, even accusing my nieces of not providing him with critical information regarding trips they had taken to Mexico with my brother; details of which would have rebutted my cousin's son (Campano's) testimony at trial. The sad truth of the matter is Mr. Rogers never took the time to adequately investigate the facts or properly interview witnesses. I don't think he was a lazy man or attorney, but I have zero doubt, regardless of his frequent claims that he was a trial expert in criminal law, the man had no business taking on a case like my brother's.
How can a lawyer learn and advocate the truth for his client, if he never properly investigated the case or took the time to learn the facts that would have supported my brother's innocence?

Sandra McLean                                                                                          10/31/19
                                                                                                                        Date

Sworn to and subscribed before me on this _____ day of October 2019, to witness which I place my hand and official seal of office.

Reyna Liliana Salas, Notary Public
In and For the State of Texas, Tarrant County



REYNA LILIANA SALAS
Notary ID #125025284
My Commission Expires
March 7, 2021

## AFFIDAVIT
### MIRIAM MICHELLE CEPEDA

STATE OF TEXAS
COUNTY OF TARRANT

On this 31st day of October 2019, personally appeared before me Miriam M. Cepeda, known to me personally to be the person whose signature is affixed hereto, who, being by me first duly sworn, on her oath deposed and said the following:

I am the youngest daughter of Defendant Jose Luis Cepeda-Cortes. I have a bachelor's degree in History and currently about to complete my Master's degree at the University of Texas-Rio Grande Valley. I am extremely active politically in the Rio Grande Valley, at the local and state-wide level. I only met attorney Robert Rogers three times throughout the two years he represented my father. Before I even met Mr. Rogers, I did NOT like Mr. Rogers, as I heard he was demanding money, in cash, from my brother, before even meeting him. The first time I met him, was an initial meeting with my family, and the second meeting, was me reiterating what I had said during the first meeting. Neither he, nor anyone else, interviewed me extensively regarding my father's case. I was called to testify in the trial, but Mr. Rogers never asked me questions or elicited information that I believe was crucial to my fathers' case.

He did not thoroughly inquire about the trip to Mexico I took with my sister Laura Cepeda and my father, after Mr. Chapa was killed.

During trial, he met with me for less than 5 minutes prior to my testimony. I did testify at trial, but Mr. Rogers was unaware or failed to ask me questions regarding:

A. My father's trips to Mexico after Chapa was killed;

B. My conclusions or feelings about the character of Jesus Ledezma (i.e. "Uncle Chuy");

C. My conclusions of my cousin Jesus Campano (Uncle Chuy's son) regarding truthfulness and his tendency to lie, as well as his motive to lie;

D. My father's nature to be caring and to be taken advantage of his gullible nature;

E. Extent of the cash flow in my father's business;

As mentioned previously, I had little contact with Mr. Rogers or others supposedly working on my father's case. Once again, I never liked Mr. Rogers, and was very aware of the conflict between my father, my brother, and Mr. Rogers. There was great disagreement within our family whether Mr. Rogers was competent and should have been hired. However, it was made clear to me repeatedly that we had no other option as we already paid him $250,000. My father's case was a high-profile case and different members of our family became concerned whether Mr. Rogers was qualified to handle such a case. My aunt Rosa, who had the most experience with attorneys had voiced concerns, as did I. From the beginning, I was not impressed, as he failed to appear confident and this was apparent in the brief encounters I had with Mr. Rogers, up until the last day of trial. Beginning with his office, he had no support staff, was disorganized and would constantly lose information provided, as well as did not have the resources necessary to defend such a big case. It was clear that my father and he were having major personality conflicts and communication between the two was bad.

I was made aware that Mr. Rogers was very uncooperative, defensive, and dismissive with my family in providing information when asked what he was doing, or his thoughts on the importance of our father's case. In my brief encounters with him, he was aloof as I had to repeat information.

After my cousin Jesus Campano testified in trial, regarding my father traveling to Mexico after Chapa was killed, and testified he met with my father and they concocted an allege alibi, my sister and I told Mr. Rogers how that was not true and that we were with my father the whole time and only saw Jesus Campano briefly at a family dinner. Rogers seemed surprised, scared, and got angry and said we never told him. He would always make excuses and seemed to blame others.

During trial, he convinced our family he had finally succeeded in convincing the U.S. attorney that my father was not involved in a major way and that our father (Defendant, Jose Luis Cepeda-Cortes) did not know Chapa was to be killed. He also stated how the government agreed and as a result my brother and father would not have to testify. Initially, he had told our family my brother was our most important witness and that he would testify last. My brother was adamant he wanted to testify. Joey was more knowledgeable about my father's case by far than anyone in our family. He had a lot of first-hand knowledge of facts that could have shown the government's allegations against my father were false and my cousin Jesus Campano was not telling the truth; not to mention many other details that indicated a lot of what the government's witnesses were saying was not accurate or true.

When my brother Joey and Aunt Rosa questioned Mr. Rogers on the tactics behind my brother not testifying, Mr. Rogers got extremely defensive and exclaimed he was a criminal trial expert and knew what he was doing. During trial, after I testified, I sat in the courtroom watching the proceedings, and I was completely mortified by Mr. Rogers performance up until the very end. One particular example that continues to haunt me, is when he apparently was running out of time in his closing argument. When Mr. Rogers was notified of his time, Mr. Rogers stated, "Oh, Shoot!" and sadly he ran out of time before finishing his closing statements. At that moment, my heart sank, I remember thinking, "This self-proclaimed ,'Super Lawyer' and 'Board Certified Criminal Law Expert' ran out of time!?" It was extremely heartbreaking knowing my father's life was in Mr. Rogers' hands.

After the jury verdict, Mr. Rogers met with our family. He informed us, that there was one witness that did not testify that would have made a big difference in that outcome of the case. I remember thinking at that time, "Who? And where was this witness? And [most importantly] why were they not at trial?"

My father is dying with cancer. And will most probably die in jail.

This hardship has taken a huge toll on our entire family, emotionally and financially. I will tell you one thing, prior to retaining Mr. Hoak and attorneys Tatum, Green, and their investigator, we all met with them for several days. The contrast in their demeanor, attitude, diligence, and thoroughness in interviewing the family and witnesses, visiting my father, Defendant Jose Luis Cepeda-Cortes, and learning every detail is drastically different compared with Mr. Rogers. They are and have been constantly in contact with our family and my father and their commitment and diligence and thoroughness of their effort and attention and focus to detail is like night and day to Mr. Rogers. Our family paid Mr. Rogers over $250,000. Our current team of attorneys have spent more time with us interviewing and investigating in the first month than the entire time Rogers was defending my father.

Miriam Cepeda

10-31-19
Date

Sworn to and subscribed before me on this _31_ day of October 2019, to witness which I place my hand and official seal of office.

Reyna Liliana Salas, Notary Public
In and For the State of Texas, Tarrant County



REYNA LILIANA SALAS
Notary ID #125025284
My Commission Expires
March 7, 2021

# AFFIDAVIT
## ROSA MADRIGAL

STATE OF TEXAS
COUNTY OF TARRANT

On this $3 |$ day of October 2019, personally appeared before me Rosa Madrigal, known to me personally to be the person whose signature is affixed hereto, who, being by me first duly sworn, on his oath deposed and said the following:

"My name is Rosa Madrigal. I am over the age of 18 and am fully competent to make this Affidavit have personal knowledge of the facts which are contained therein and do state under the penalty of perjury that the facts stated are true and correct.

I am the sister of Defendant Jose Luis Cepeda-Cortes. I was a witness who testified for my brother at his trial. Though I was called to testify for the Defendant by attorney Robert Rogers, there were many questions and information I knew regarding facts involved in the case that Rogers did not ask me about and as a result information favorable to my brother was never heard by the jury. I believe this resulted as a result of attorney Rogers never adequately interviewing me and other potential witnesses. He did not thoroughly investigate my brothers' case nor spend any significant time with our family or witnesses that could have testified favorably for my brother.

Our family was not in favor of retaining Rogers after we met him. However, at the time his son Joey, precipitously retained Rogers and paid him a large amount of money as a retainer.

I have worked for Border Patrol and Office of Homeland Security for 31 ½ years. I have held several leadership positions and at the time of my brother's arrest I held a Division Chief G-15 with a secret security clearance with U.S Department of Homeland Security the highest rank in the division. Now I am the Director of Personnel and Finance G1-14. Our family is well known in the McAllen community, socially and politically active and without any criminal history. We are law abiding, God fearing, good people. At the onset I had many concerns about attorney Robert Rogers. When I initially went to his office in Dallas, I was surprised that he had no legal staff whatsoever; no receptionist, legal assistant, or paralegal and no one answering his office phone. He did not even have a computer. We purchased him a computer and office equipment which my sister Sandy purchased and took to him as well. When I asked him why he had no staff, he stated "I am not any good with people. "They all quit, or I fire them. I work alone and

don't like working with others". This concerned me and our family except for my brother's son. Mr. Rogers seemed intelligent, but his nature and demeanor was that he always appeared nervous, and impatient. Many times, irritable. I perceived him to be an insecure person and overly defensive. A Robert Rogers was referred to our family. The Robert Rogers my nephew retained represented he was "a Board-Certified Criminal Law Expert"; however, looking back we now know there are two Robert Rogers in Dallas who practice Criminal Law. With what I know now I wonder whether our family made a mistake and confused the two attorneys and actually retained the wrong Robert Rogers.

From the outset there was conflict amongst and in our family regarding Robert Rogers representing my brother.  My brother's son rushed and retained him immediately before the rest of the family could meet him and paid him a $20,000 retainer fee. I have dealt with a lot of attorneys in my capacity working for Homeland Security. The entire family was responsible for my brothers' legal fees and we were unhappy Joey had retained Mr. Rogers. What I am certain is attorney Rogers was ineffective and thoroughly incompetent in representing my brother before and during trial. There was a lot of personal conflict between my brother and his attorney. My brother wanted to terminate his services. Mr. Rogers never spent much time with my brother, witnesses or family members who had knowledge of facts favorable to my brother's innocence or addressing government accusations. Mr. Rogers did not spend significant time with us learning the facts or investigating the case. He did not know or fully comprehend facts or information that would have helped my brother and I believe now it's because he did not possess' basic skills in interviewing potential fact witnesses, or even have the capacity to spend the necessary time with them. There is a lot of information and facts regarding my brother's defense that never was heard by the jury. In trial I was taken back when I testified that Rogers did not even in any way establish the good character and credibility of our family. This is important because there is a vast difference in the quality and good character between our family and Ledezma and Campano. When I testified, Attorney Rogers assigned Co-counsel Steven Cooper at the last minute to ask me the questions. Mr. Cooper could not read Mr. Rogers handwritten notes so he did not ask the key question regarding my employment and many relevant questions being a witness for my brother.

In contrast to my cousin Jesus Ledezma and my cousin Jesus Campano our family and my brother were and are exceptional citizens, good hard-working people and well respected in the community. In trial, our family, many who were to testify sat outside the courtroom. After the government was finished with their case we were extremely concerned and upset. Rogers told our family at that time "things do not look good" but stated he believed that as a result of his legal strategy, the government did not prove their case. We still remained hopeful because Rogers had told us my brothers son Joey would testify and he and my brother knew more about

the government charges than anyone. Joey was to testify last. After calling a number of us as witnesses, Mr. Rogers came out and told us he had great news and that he had succeeded in convincing the U.S Attorney to "stipulate" and agree that my brother played only as small role in the conspiracy. He was excited and for the first time our family had hope. He told us no further testimony was necessary and that the U.S Attorney would let the jury know the small role and lack of knowledge my brother had regarding the death of Mr. Chapa. We were concerned when Mr. Rodgers told us Joey, my brothers' son, would not be needed to testify. Joey felt he should testify. Mr. Rogers daughter and all our family members and witnesses were present when he spoke to us. Joey was firmly of belief as we were, that he should testify. I remember wondering why Mr. Rogers daughter was present at the time and during the trial. She was not a legal person. In fact, Mr. Rogers told us "she is a nurse but helps me sometimes in trial". Our contact with and exposure to the other attorneys was minimal.

On another occasion during trial, after my cousin Jesus Campano testified for the government, Mr. Rogers met with us. My brother's daughter Miriam was astounded when she learned Campano testified that he and my cousin Jesus Ledezma and my brother had met in Mexico after the victim was shot and testified the three agreed to some type of story if they were ever questioned. Miriam was upset and told Mr. Rogers my cousin Jesus Campano was lying, and that she had been with my brother when he traveled to Mexico after Mr. Chapa was killed and my brother had not even spoke with Campano. Mr. Rogers really got nervous and then upset and raised his voice abit saying "you never told me this". My one niece Miriam Cepeda is a fire plug and very vocal and a strong woman. She is very active in politics in McAllen and she replied, "you never even asked us!". "You never investigated the case."

After the trial and the jury verdict our family was heartbroken and there just was nothing left emotionally. Mr. Rogers told us "there was a witness that could have made a big difference," but it is too late now". The true facts regarding my brother and facts and evidence regarding his lack of knowledge and innocence, and information our family and witnesses could have testified never came out in the trial. There is little doubt, that while maybe an intelligent man, Mr. Rogers was ineffective if not incompetent defense attorney. He did not possess the aptitude, skills, or diligence to thoroughly investigate the charges against my brother or the competence and diligence in interviewing witnesses and preparing my brothers defense. In contrast to his bravado and claims of being a "specialist" prior to trial, in trial he appeared very meek and unconfident. I remember sitting outside during trial and talking with Gilbert Torres a private investigator working for attorney Wes Ball who represented my cousin Jesus Ledezma. I made the comment to Torres that our family wished we had an attorney like Mr. Ball.

_R Madrigal_
Rosa Madrigal

_10/31/2019_
Date

Sworn to and subscribed before me on this 31 day of October 2019, to witness which I place my hand and official seal of office.

_Reyna L Salas_

Reyna Liliana Salas, Notary Public
In and For the State of Texas, Tarrant County



REYNA LILIANA SALAS
Notary ID #125025284
My Commission Expires
March 7, 2021

# AFFIDAVIT
## JOSE LUIS CEPEDA II
### A.K.A JOEY CEPEDA

STATE OF TEXAS
COUNTY OF TARRANT

On this **31st** day of October 2019, personally appeared before me Joey Cepeda, known to me personally to be the person whose signature is affixed hereto, who, being by me first duly sworn, on his oath deposed and said the following:

"My name is Jose Luis Cepeda II. I am over the age of 18 and am fully competent to make this Affidavit and have personal knowledge of the facts contained therein and do state under the penalty of perjury that the facts stated are true and correct."
I have no criminal history; I am certified as an Information Technology and Cisco Networking and have done very well in owning a successful computer business in the McAllen community. I am the son of the Defendant Jose Luis Cepeda-Cortes. My father was convicted and found guilty of Conspiracy to Commit Murder /Interstate Stalking and Obstruction/ Tampering with Documents or Proceedings after a 13-day jury trial. Justice did not occur during the trial. Evidence of my father's innocence was not presented by trial counsel. Finally, perhaps Judge Means you now are in a position to ensure Justice. Judge Means, after the trial I wrote you a letter. In your reply letter to me dated June 20,2016 you advised there "was nothing you could do <u>at the time</u> "and advised my father's remedy was the appellate process. My fathers appeal was denied on November 5,2018. Our family has retained now our third set of attorneys to prosecute a Motion Under 28 U.S.C 2255.I am appealing to you Judge Means to grant an evidentiary hearing allowing our attorneys to offer evidence supporting the allegation in my father's Motion Under 28 U.S.C 2255 and evidence of his innocence and evidence my father's trial counsel, Robert Rogers was ineffective and in fact incompetent in violation of mandates determined in U.S vs Strickland. My father is innocent of the charges he was convicted of. He was wrongly convicted. Had his case been diligently investigated, and fact witnesses competently identified and interviewed and procured for trial much of the government accusations and evidence could have been rebutted and government witnesses properly impeached. Trial attorney Robert Rogers incompetence and ineffective representation precluded the jury from hearing facts that otherwise would have resulted in a verdict of not guilty. His ineffectiveness harmed my father. My father, Cepeda-Cortes received ineffective assistance of trial counsel.

1. Who failed to competently and diligently investigate all of the facts related to the government's allegations.

2. Who failed to diligently interview, consult, and advise my father, Cepeda-Cortes. Mr. Rogers rarely met with my father in the preparation of his case. During the 13-day trial Mr. Rogers did not meet with my father.

3. Who failed to competently and diligently interview facts witnesses, who had personal knowledge of material facts evidencing the innocence of Cepeda- Cortes, and relevant to rebutting government accusations. As a result, Mr. Rogers did not grasp or fully understand/ comprehend material facts evidencing my father's innocence or have knowledge of material facts crucial to cross examine government witnesses, especially the cooperating co- conspirator, Jesus Campano, or rebut government accusations. Mr. Rogers always seemed nervous, impatient, and became highly defensive when my father, myself, or fact witnesses, and family members would attempt to provide him with information about my father's case, or the government accusations. When I would question him about information provided by the government or attempt to disclose facts rebutting them, he would become highly irritable and defensive when I would inquire what he was doing or asked him to investigate matters. Once he claimed he was "a board-certified criminal trial expert" and knew exactly what he was doing. On one occasion he called me a "loaded cannon" when actually our family felt he was perhaps unstable. He seemed extremely uncomfortable around others and often would not listen to what we all were attempting to convey to him about the facts. As a result of not diligently interviewing fact witnesses and investigating the case Rogers never truly comprehended the facts, nor had knowledge of them. Facts which were relevant to rebutting government accusations and which evidenced my father's innocence. Our current attorneys and their investigator spent more time with our family and fact witnesses in the first week of their retention, than Rogers did the entire pretrial and trial period. In the methodology thoroughness and ability to listen demonstrated by our current attorneys they discovered and became aware of facts and evidence never inquired by Roger. Facts which had Rogers competently and thoroughly interviewed witnesses and investigated my father's case would have been presented to the jury. Trial counsel Robert Rogers failed to diligently and thoroughly interview the following witness and present facts at trial that would have rebutted government accusations and would have cast doubt as to the truthfulness of government witnesses:

A. Miriam Cepeda, Defendant Cepeda Cortes daughter Miriam Cepeda traveled with Defendant to Mexico subsequent to victim Chapas death. The Government called as a witness my cousin at trial Campano, a cooperating co-conspirator. He testified he and my uncle, co- conspirator Jesus Ledezma, met with my father after Chapas

death in Mexico and the three concocted an alibi defense. My sister Miriam Cepeda was never interviewed by attorney Rogers competently or thoroughly. Miriam could and would have testified her father Cepeda Cortes only traveled to Mexico two times subsequent to Chapas death and prior to his arrest and that both times Miriam and her sister Laura Cepeda traveled with defendant Cepeda Cortes. They could have testified he did not meet with or converse with Jesus Campano and that Campano was only briefly seen at a family function and had no contact with Cepeda Cortes, rather left the function early. Despite being put on notice that Campano would testify for the government and being in possession of government discovery, attorney Rodgers never inquired, consulted, or interviewed fact witnesses that had factual information that would have contradicted Campano and cast doubt as to the veracity of the cooperating co- conspirator Campano claims regarding Defendant. Had Rogers taken the time and diligently interviewed my sister he would have been aware Campano was lying. However, this critical bit of information was never presented to the jury.

B.   Laura Cepeda, defendant Cepeda Cortes daughter Laura Cepeda also traveled with Miriam Cepeda and her father to Mexico subsequent to Chapas death and would and could have provided specific factual details controverting cooperating co-conspirators Campano testimony in trial. Laura Cepeda was never interviewed by attorney Robert Rogers, nor in trial did he ask any questions of her or attempt to elicit facts that would have rebutted Campanos untruthful testimony.

C.   Gilbert Garza a police officer in the McAllen community. Gilbert Garza was never interviewed or investigated by Rogers. Cooperating co-conspirator Campano testified in trial the three-co- conspirators found victim Chapa in Southlake Texas as a result of pictures and information provided by a McAllen cop aka Gilbert Garza to defendant Cortes Cepeda. This was untrue Gilbert Garza was interviewed by F.B.I and not charged. He was available as a witness to rebut Campanos testimony but was never interviewed or called as a witness at trial.

D.   Hugo Resendez Mr. Resendez was employed by my father, Defendant Cepeda-Cortes in his Decal BY Design Shop all in one stop signs/Computer Repair/ Networking and Surveillance Camera. Despite family members identifying witness Hugo Resendez to Rogers as potential witness for my father, attorney Rodgers never interviewed or investigated witness Hugo to determine if he had information relevant to my father's defense. Witness Hugo was not subpoenaed or identified by Rodgers as a defense witness. Hugo Resendez had information that co-conspirator Ledezma and Campano were sophisticated and knowledgeable in their understanding and operation of computers and had frequent unsupervised access to my father's, and Defendant Cepeda Cortes computers located at Defendant's

business. That Campano and Ledezma had operated and used it unbeknownst and unauthorized by my father. Rodgers never investigated or competently interviewed witness Hugo Resendez. Had he done so information rebutting government accusations, rebutting testimony offered by F.B.I agents, and false testimony provided by Campano and Ledezama would have been heard by the jury.

E.  Witness Elena Gonzalez. Government in discovery provided attorney Robert Rogers information on the identity, general location of Elena Gonzalez. She had information relevant to victim Chapas criminal activities, and status as "defacto location of the Gulf Cartel". Rogers also had filed an Alternative Perpetrator Defense Motion and Witness Gonzalez was a fact witness supporting Cepeda Cortes defensive theory. In fact evidence not presented at trial supports Chapa was in fact greatly involved in criminal activities, and the defacto leader of the Gulf Cartel. Chapa had many enemies that wanted him dead. Evidence testified at trial by either Campano or Ledezma indicate other individuals were looking for Chapa in addition to Rodolfo Villareal aka "El Gato". Subsequent to the jury verdict, two F.B.I 302 reports provided to my father Cepeda -Cortes appellate attorneys evidence the, Zetas not Gato had killed Chapa. Attorney Rogers never timely contacted, interviewed, or subpoenaed witness Gonzalez to trial. Rather prior to trial he attempted to blame the government for not providing information about Gonzalez to the defense. Honorable Judge Terry Means denied Rogers continuance request and in reply to Rogers complaining that he was "a solo practitioner "and the government untimely provided him Gonzalez information, Judge Means replied "the government provided you with the information and now you want them to do your work for you too". During the later part of the trial Rodgers disclosed to family members of Cepeda Cortes "there was a witness that would have made a big difference in the outcome of the trial, but it's too late now." Rodgers ineffectiveness to competently and diligently review government discovery, identify witnesses, to comprehend material facts to Cepeda Cortes defense and to subpoena material witnesses caused defendant harm and prevented jury from hearing relevant facts that would have rebutted the government's theory of prosecution, rebutted government accusations and contradicted and impeached testifying government witnesses.

4.  Who failed to call me, Joey Cepeda-Cortes Jr. as a defense witness. From the outset of my father's arrest attorney Rodgers identified me as the defenses primary and most important witness. He communicated this to me, Defendant Cepeda Cortes and other family members. He even identified to all of us that I would testify last. I could have provided relevant testimony supporting my father's innocence, lack of knowledge, and provided information and specifics how Ledezma and Campano tricked and took

advantage of my father and secreted the true purpose of the conspiracy from my father. That they had access to my father's computers and personal account. Also, the degree of co – conspirator Ledezma and Campanos sophistication and skill in operating computers. I had knowledge of the specific actions I witnessed how Ledezma tricked my father and our family and could have testified and offered testimony contradicting government accusations and which would have rebutted government witnesses; specifically, the untruthful testimony of the cooperating government co- conspirator, my cousin Jesus Campano. Much of Campanos trial testimony was untrue. Campano testified in trial regarding details of my father Cepeda Cortes involvement and role in the conspiracy. He untruthfully testified seeing me and my activities in Florida. All of his testimony was a lie Campano was not in Florida when I traveled and stayed there. I never saw him. The F.B.I knew Campano was not telling the truth because I wrote a letter to Josh Burgess the U.S Attorney prior to trial and F.B.I agents interviewed me before the trial. Despite having this information and representing to my father, our family, and myself that I would testify, attorney Rogers did not call me to the stand. Rogers failed to communicate with my father, Defendant Cepeda Cortes, about Counsel's decision not to call me as a defense witness. During the government's presentation of evidence Rogers twice told our family "that it did not look good for my father." All of us were anticipating my being called as a witness including my father. Our family was out raged at Mr. Rogers effectiveness in trial. His ineptitude in cross examination, his total inability to comprehend facts of the case and present evidence of my father's innocence. After my cousin Campano testified and lied about an alibi agreement allegedly made by my uncle (Ledezma) and cousin (Campano), my sister approached attorney Rogers and told him she had been with my father when he traveled to Mexico after Chapas death and my father did not even speak with Campano or meet with Ledezma. Mr. Rogers appeared scared, nervous and unraveled emotionally and yelled at my sisters "why didn't you tell me that before". Mr. Rogers never competently or diligently interviewed family members, my father or fact witnesses to identify facts evidencing my father's innocence and which would have rebutted government accusations and discredited and allowed impeachment of Campano.

5. Defendant Cepeda Cortes received ineffective assistance of counsel when trial attorney Rogers failed to communicate and consult with Defendant about Counsel's decision not to call Defendants son as a defense witness. From the outset my father, family and I were told by trial counsel Rogers I would testify in trial and would be my father's number one witness. Mr. Rogers told my father and our family I would testify last. However, after calling a few defense witnesses, Rogers held a conference outside the Court with myself and all family members and defense witnesses. Mr. Rogers

represented he had succeeded in convincing the government attorney to stipulate that my father had "played a minor role in the conspiracy" and told our family and myself there would be no need for further witnesses to testify. He claimed, "this was a great victory and that the U.S attorney would acknowledge this to the jury." I wanted to testify, and my father was anticipating I would testify. This was communicated to Rodgers. Rodgers got upset and exclaimed there was no need for further testimony because the government had finally "caved" and acknowledged my father's role in the conspiracy was minor. Rodgers failed to tell my father about Rodgers decision not to call me as a witness. After the trial my father and our family learned when discussing Rogers conduct and the legal import of the stipulation Roger made with the government that its legal significance was meaningless and either trial counsel Rogers misunderstood the stipulation or in fact mis- represented the stipulation intentionally to myself and our family. I was very upset that Rogers fell for the bait Burgess put out, instead of Rogers admitting he was wrong on not putting me on the stand, he says that Burgess was trying to find a way to indict me. In reality my opinion is that Burgess never wanted me to take the stand since he knew all evidence showed I was never in a conspiracy and my testimony of everything I witnessed would have helped my fathers case.

6. Defendant Cepeda Cortes received ineffective assistance of trial counsel when his trial counsel failed to adequately cross examine the cooperating government witness co-defendant Campano. As a result of not competently interviewing fact witnesses and thoroughly investigating government accusations nor having command of the facts, Rogers was ineffective in his cross examination of Campano.

7. My father received ineffective assistance of trial counsel when trial counsel Mr. Rogers failed to call Defendant as a witness or advise him of his right to testify.

Joey Cepeda

10/31/19

Date

Sworn to and subscribed before me on this 31s day of October 2019, to witness which I place my hand and official seal of office.

Reyna Liliana Salas, Notary Public
In and For the State of Texas, Tarrant County



REYNA LILIANA SALAS
Notary ID #125025284
My Commission Expires
March 7, 2021